UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARRY LYNN TOLAR, JR., Case No.

Plaintiff, Hon.

V.

DTE ENERGY COMPANY,

Defendant.

Greg Jones (P75318)
MORGAN & JONES PLLC
Attorneys for Plaintiff
30500 Northwestern Hwy, Ste 425
Farmington Hills, MI 48334
P: 248-865-0001
F: 248-865-0002
gjones@work-lawyers.com
rhanlon@work-lawyers.com

## **COMPLAINT**

Plaintiff Garry Lynn Tolar, Jr., by and through his attorneys, MORGAN & JONES PLLC, alleges and states as follows:

## **PRELIMINARY STATEMENT**

1. Plaintiff Garry Lynn Tolar, Jr. ("Tolar") brings this action against his former employer, DTE Energy Company ("DTE"), for interference with his employee benefit rights in violation of Section 510 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1140, and for age discrimination in violation of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), M.C.L. § 37.2101 et seq.

2. DTE employed Tolar for nearly 25 years, during which he rose from lineman to General Supervisor and compiled an outstanding performance record, including operating metrics among the best in the company. In 2023, amid a company-wide drive to cut costs and workforce, DTE targeted senior, long-tenured, pension-holding employees for removal. On or about December 19, 2023, when Tolar was 55 years old and approximately seven years short of the age at which his pension would have roughly doubled in value, DTE terminated him on the pretextual ground that he was "not meeting expectations," bypassing its own progressive-discipline process. DTE discharged Tolar to interfere with his attainment of pension and retirement benefits and because of his age.

## **JURISDICTION**

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States,

namely Section 510 of ERISA, 29 U.S.C. § 1140, which is enforceable under 29 U.S.C. § 1132(a) and (e). This Court has supplemental jurisdiction over Plaintiff's related state-law claim pursuant to 28 U.S.C. § 1367(a) because that claim is so related to the federal claim that it forms part of the same case or controversy.

## VENUE

4. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district, including Plaintiff's employment at, and termination from, DTE's service center in Mt. Clemens, Macomb County, Michigan. Venue also lies under 29 U.S.C. § 1132(e)(2) because the alleged breach took place in this district and DTE may be found here.

## PARTIES

5. Plaintiff Garry Lynn Tolar, Jr. is an individual who resides in Chesterfield, Macomb County, Michigan. He was born in 1968 and was 55 years old at the time of his termination.

6. At all relevant times, Tolar was an "employee" within the meaning of ERISA, 29 U.S.C. § 1002(6), and of the ELCRA, M.C.L. § 37.2201. He worked for DTE from on or about January 4, 1999 until on or about December

19, 2023, most recently as a General Supervisor at DTE's service center in Mt. Clemens, Michigan.

7. At all relevant times, Tolar was a "participant" within the meaning of 29 U.S.C. § 1002(7) in one or more employee benefit plans sponsored and/or administered by DTE, including a defined-benefit pension plan and a 401(k) retirement savings plan, each an "employee benefit plan" within the meaning of 29 U.S.C. § 1002(3).

8. Upon information and belief, Defendant DTE Energy Company is a Michigan corporation with its principal place of business in Detroit, Michigan, and maintains offices and does business throughout southeastern Michigan, including in this district. DTE was Tolar's employer within the meaning of ERISA and the ELCRA, M.C.L. § 37.2201, and was the sponsor and/or administrator of the employee benefit plans in which Tolar participated.

## FACTS

9. DTE hired Tolar on or about January 4, 1999. He began as a lineman and, over the next approximately 25 years, advanced through positions of increasing responsibility, including Area Leader and General Supervisor, overseeing overhead linemen, underground splicers, and associated office staff across DTE's service territory.

10. Throughout his career, Tolar was a strong performer with no history of formal discipline. At his prior service center, he achieved operating metrics among the best in the company, and his operations ran efficiently and within budget.

11. On or about October 1, 2023, DTE transferred Tolar to serve as General Supervisor of its Northeast division, based at the Mt. Clemens service center — a larger and more demanding operation than his prior assignment.

12. By 2023, DTE was experiencing financial strain, including in connection with rate-case and regulatory developments before the Michigan Public Service Commission. DTE undertook a company-wide initiative to reduce its workforce and operating costs. Senior management directed that supervisors "chop heads," warned that otherwise "your head will get chopped," and conveyed that the company had to "cut weight."

13. Shortly after Tolar's transfer, his new manager, Daniel Starr (then approximately 45 years old), subjected Tolar to heightened scrutiny and discipline that was not applied to younger or less-senior employees. During a budget meeting in Tolar's first week, the division director remarked that Tolar was "the senior guy" of whom "better" was expected.

14. Starr directed Tolar to impose discipline and performance-improvement plans on two of Tolar's older subordinates — Doug Berg (then approximately 55 years old) and Al Wilkinson (then approximately 62 years old) — although they had engaged in no conduct warranting discipline. Starr also disciplined Tolar for declining to run a weekly performance-improvement process against another older employee who was not subject to any formal discipline.

15. When Tolar objected, Starr told him that the company was "targeting" senior, knowledgeable employees "who have pensions." During the same period, DTE installed younger managers and treated younger and newly hired employees more favorably than Tolar and other older, long-tenured supervisors.

16. Tolar repeatedly complained, to Starr and to DTE's human resources department, that he and the older employees were being targeted. A DTE ethics officer who reviewed a related complaint observed that it "feels like you guys are being targeted." DTE took no corrective action.

17. Tolar's performance in fact met or exceeded expectations. His budget results were the best in the Northeast division and among the best in the company for operations-and-maintenance spending.

18. DTE maintained a four-step progressive-discipline process — consisting of (1) a performance discussion, (2) an oral reminder, (3) a written reminder, and (4) a performance-improvement plan — followed by a fact-finding meeting, before terminating an employee. DTE did not apply this process to Tolar.

19. On or about December 19, 2023, during a brief video meeting, Starr and a DTE human-resources manager read Tolar a prepared statement that he was employed at will, had "not met expectations," and was terminated. When Tolar asked which expectations he had failed to meet, DTE identified none.

20. Tolar was 55 years old when DTE terminated him. Had his employment continued until age 62, his pension would have grown from approximately $500,000 to approximately $1.1 million. By terminating Tolar when it did, DTE cut off the substantial future growth of his pension and his continued participation in, and contributions to, its 401(k) plan.

21. Within weeks of Tolar's termination, in or about January 2024, DTE offered buyouts to employees, consisting of 43 weeks of pay, a $10,000 bonus, and COBRA continuation coverage. DTE did not offer Tolar a buyout, a demotion, or any alternative to termination.

22. DTE's stated reason for terminating Tolar — that he was "not meeting expectations" — was false and a pretext. DTE terminated Tolar to interfere with his attainment of pension and retirement benefits and because of his age.

## COUNT ONE

## Interference with Benefit Rights in Violation of Section 510 of ERISA, 29 U.S.C. § 1140

23. Tolar repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

24. At all relevant times, Tolar was a participant in DTE's defined-benefit pension plan and 401(k) plan, each an employee benefit plan governed by ERISA.

25. Section 510 of ERISA, 29 U.S.C. § 1140, makes it unlawful for an employer to discharge a participant for the purpose of interfering with the attainment of any right to which the participant may become entitled under an employee benefit plan. Section 510 protects a participant's right to attain future benefit entitlements, free from intentional interference, and is not limited to benefits already accrued.

26. DTE discharged Tolar for the purpose of interfering with his attainment of pension and retirement benefits — in particular, the substantial future growth of his pension and his continued participation in and

contributions to the 401(k) plan — that he would have attained had his employment continued.

27. DTE acted with the specific intent to interfere with Tolar's ERISA-protected benefit rights. That intent is shown by, among other things, DTE's statements that it was targeting senior employees "who have pensions"; its company-wide directive to cut costs and "weight"; the close proximity of Tolar's discharge to the substantial increase in the value of his pension; DTE's refusal to offer him a buyout, demotion, or other alternative to termination; and its disregard of its own progressive-discipline process.

28. DTE's proffered reason for the discharge — that Tolar was "not meeting expectations" — is a pretext and is unworthy of credence. Interference with Tolar's attainment of benefit rights was a motivating factor in DTE's decision to terminate him. DTE's cost-cutting and business-judgment rationale does not shield it from liability, because DTE did not act on neutral concerns that were unrelated to interference with Tolar's benefit rights.

29. As a direct and proximate result of DTE's unlawful conduct, Tolar has lost pension and retirement benefits, including the future growth of his pension and his 401(k) benefits, and is entitled to relief under 29 U.S.C. § 1132(a), including restoration of the benefits he would have attained, other

appropriate equitable relief, and reasonable attorneys' fees and costs under 29 U.S.C. § 1132(g).

## COUNT TWO

## Age Discrimination in Violation of the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2202

30. Tolar repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

31. The ELCRA, M.C.L. § 37.2202(1)(a), prohibits an employer from discharging or otherwise discriminating against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of age.

32. Tolar was 55 years old at the time of his termination and was a member of the class protected against age discrimination under the ELCRA.

33. Tolar was qualified for his position and performed it satisfactorily, achieving budget and operating metrics among the best in the company.

34. DTE subjected Tolar to an adverse employment action by terminating his employment.

35. DTE discharged Tolar under circumstances giving rise to an inference of unlawful age discrimination, including DTE's installation of substantially younger managers, its more favorable treatment of younger and less-senior employees, its targeting of older, long-tenured supervisors

(including Tolar and his older subordinates) for discipline and removal, and its departure from its own progressive-discipline process.

36. DTE's stated reason for the discharge — that Tolar was "not meeting expectations" — was false and a pretext for age discrimination. Tolar's age was a motivating factor that made a difference in DTE's decision to terminate him.

37. As a direct and proximate result of DTE's unlawful age discrimination, Tolar has suffered damages, including lost wages and benefits, past and future, and emotional distress, and is entitled to injunctive relief and damages under M.C.L. § 37.2801, including reasonable attorneys' fees.

## COUNT THREE

### Retaliation for Opposition to Violations of the Elliot-Larsen Civil Rights Act, MCL § 37.2202

38. Tolar repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

39. The ELCRA, M.C.L. § 37.2701, prohibits an employer from retaliating or discriminating against a person because that person has opposed a violation of the Act, or because that person has made a charge, filed a complaint, or otherwise objected to conduct made unlawful by the Act.

40. Tolar engaged in activity protected by the ELCRA when he opposed DTE's age-based targeting of older employees. Specifically, Tolar refused to impose unwarranted discipline and performance-improvement plans on his older subordinates — including Doug Berg (then approximately 55 years old) and Al Wilkinson (then approximately 62 years old) — and on another older employee, which Tolar reasonably believed DTE was directing because of those employees' age, and he repeatedly objected and complained to his manager and to DTE's human resources department that DTE was unlawfully targeting older, long-tenured employees.

41. Tolar held a reasonable, good-faith belief that the conduct he opposed violated the ELCRA.

42. DTE, through Daniel Starr and its human resources personnel, knew of Tolar's protected opposition activity.

43. DTE took an adverse employment action against Tolar by terminating his employment within weeks of his protected opposition. A causal connection exists between Tolar's protected activity and his termination. Tolar's opposition was a significant factor in DTE's decision to discharge him, as shown by, among other things, the close temporal proximity between his complaints and his termination, DTE's heightened scrutiny and discipline of Tolar after he objected, and DTE's departure from

its own progressive-discipline process. As a direct and proximate result of DTE's unlawful retaliation, Tolar has suffered damages, including lost wages and benefits, past and future, and emotional distress, and is entitled to injunctive relief and damages under M.C.L. § 37.2801, including reasonable attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests judgment as follows:

A. Declaring that DTE's conduct violated Section 510 of ERISA, 29 U.S.C. § 1140, and the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2202;

B. On Count One, ordering DTE to make Tolar whole for the pension and 401(k) retirement benefits lost as a result of his unlawful discharge, including restoration of the value of the benefits he would have attained but for the interference, together with such other equitable relief as is appropriate under 29 U.S.C. § 1132(a);

C. On Counts Two and Three, awarding Tolar his past and future lost wages and benefits (including front pay in lieu of reinstatement, which Plaintiff does not seek) under the Elliott-Larsen Civil Rights Act;

D. On Counts Two and Three, awarding Tolar compensatory damages, including damages for emotional distress, under the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2801;

E. Awarding Plaintiff pre- and post-judgment interest as allowed by law;

F. Awarding Plaintiff his reasonable attorneys' fees and costs incurred in this action under 29 U.S.C. § 1132(g) and M.C.L. § 37.2801; and

G. Granting Plaintiff such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims properly triable by a jury.

Respectfully Submitted:

*/s/ Greg Jones*

Greg Jones (P75318)
MORGAN & JONES PLLC
Attorneys for Plaintiff
30500 Northwestern Hwy, Ste 425
Farmington Hills, MI 48334
P: 248-865-0001
gjones@work-lawyers.com
rhanlon@work-lawyers.com

DATE: November 18, 2026